UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 JUN 29 PM 1:58

CLERK

BY_____ pjl
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:19-cr-140 |
| | ) | |
| CORY JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTIONS TO SUPPRESS
### (Docs. 18, 19)

Following a search of his residence in March 2018, defendant Cory Johnson pled guilty to possession of child pornography. Plea Agreement, *United States v. Johnson*, No. 5:18-cr-41 (D. Vt. Dec. 17, 2018), ECF No. 28. The search occurred pursuant to a federal search warrant. Mr. Johnson received a 45-month sentence under a plea agreement in May 2019. Judgment, *United States v. Johnson*, No. 5:18-cr-41 (D. Vt. May 9, 2019), ECF No. 39. He is now serving this sentence.

In September 2019, the Government learned from the National Center for Missing and Exploited Children ("NCMEC") that a video seized in the original search in 2018 contained GPS metadata consistent with an address near Burlington, Vermont. This court issued a second search warrant for the residence where Mr. Johnson's wife now lives. A second search resulted in the discovery of bedding that resembled bedding seen in the video. In October 2019, the grand jury returned an Indictment charging Mr. Johnson with producing child pornography in violation of 18 U.S.C. § 2251(a). (*See* Doc. 1.)

The court has previously denied Defendant's motion to enforce the plea agreement in his 2018 case and to dismiss the Indictment in this 2019 case. (*See* Doc. 41.)

Defendant has filed motions to suppress addressed to the 2018 search (Doc. 18) and the 2019 search (Doc. 19). With respect to the 2018 search warrant, he contends:

- The search warrant was overly broad because it permitted a search of the seized electronic devices without any limitation based on the date of receipt of the files or messages contained in his phones and computers.

- The warrant impermissibly allowed the seizure and search of every electronic device in the Johnson residence and allowed a comprehensive search of the contents.

- NCMEC's search of files forwarded by the Government during the summer of 2019 exceeded the scope of the 2018 warrant.

- The 2018 warrant was "extinguished" by the plea agreement and could not provide a basis for NCMEC's search after Defendant's conviction.

- NCMEC's search for GPS data was untimely.

- Federal law enforcement's search in September 2019 of the files seized pursuant to the 2018 warrant was unconstitutional because it came too late.

- The search of the marijuana video exceeded the scope of the 2018 warrant.

With respect to the 2019 search warrant, he first contends:

- The warrant issued without probable cause.

- The warrant issued on the basis of stale information since the Johnson family had relocated to a new address.

- The good faith exception to the exclusionary rule does not apply to the 2019 search.

- Statements made by Defendant's wife and child must be suppressed as "fruits" of an unconstitutional search.

On December 2, 2020, the court held an evidentiary hearing. (*See* Doc. 53 (transcript).) The court heard additional argument on the motions at a hearing on January 26, 2021. At that hearing, the defendant supplied an important new basis for suppression. Through counsel he identified what both sides agree is an error in the affidavit submitted in support of the 2019 warrant. The court conducted a *Franks* hearing concerning the error on June 1, 2021.

## FACTS

In March 2018, a Homeland Security Investigations ("HSI") special agent in North Carolina posed as a member of a group of KIK users in order to investigate the exchange of child pornography. KIK is an online chat platform. The investigator learned that a member of the group had posted four videos and a Dropbox link to the other members of the KIK group. All contained child pornography. The member used the name "textile." Through administrative subpoenas issued to KIK and to Comcast, the investigator identified Cory Johnson as the individual likely to be the subscriber making use of the IP address used by "textile." Because Mr. Johnson lived on Mountain View Boulevard in South Burlington, Vermont, the tip was forwarded to HSI special agent Caitlin Moynihan for further investigation in Vermont.

SA Moynihan conducted surveillance of the Johnson residence and Mr. Johnson. She reviewed publicly available Facebook pages showing members of the Johnson family. On March 19, 2018, SA Moynihan submitted a search warrant application to United States Magistrate Judge Conroy. She sought to seize all computers and other electronic devices within the home. The list was comprehensive and included phones, computers, disk drives, and peripheral devices such as monitors and printers. The application was supported by an affidavit

describing the child pornography discovered on the KIK site and the subsequent course of the investigation in Vermont.

Judge Conroy issued the search warrant. It was executed on March 20, 2018, and resulted in the seizure of multiple computers, cell phones, tablets, cameras, thumb drives, and other electronic devices. Mr. Johnson was charged with distribution of child pornography the same day.

In June 2018, a forensic analyst employed by HSI completed a forensic review of the seized devices. The review identified child pornography on multiple devices.

On January 4, 2019, Mr. Johnson pled guilty to a superseding information charging him with possession of child pornography. *See* Superseding Information, *United States v. Johnson*, No. 5:18-cr-41 (D. Vt. Jan. 4, 2019), ECF No. 30; *see also* Minute Entry, *id.*, ECF No. 31 (noting entry of guilty plea). The plea agreement provided for an agreed term of 45 months pursuant to Fed. R. Crim. P. 11(c)(1)(C). Plea Agreement, *United States v. Johnson*, No. 5:18-cr-41 (D. Vt. Dec. 17, 2018), ECF No. 28. On May 9, 2019, the court sentenced him to 45 months. Judgment, *United States v. Johnson*, No. 5:18-cr-41 (D. Vt. May 9, 2019), ECF No. 39.

In June 2019, SA Moynihan submitted the contraband materials seized in the 2018 search to NCMEC for a review to determine whether the videos and other computer files contained images of children not previously known to NCMEC. NCMEC has long maintained a database of known collections of child pornography. NCMEC has the computer tools needed to compare newly seized materials against these known collections in order to identify children who might be at risk of abuse and to assist in obtaining restitution for other victims.

At the hearing on the suppression motion, SA Moynihan was candid with the court in stating that she had forgotten to submit the files to NCMEC while Mr. Johnson's case was pending. Normally she would do so. She thought she had, but when she checked, the review by NCMEC had not occurred. The court finds her testimony credible on this point. There is no basis for concluding that SA Moynihan intentionally postponed the submission of the file to NCMEC until the Government had secured a guilty plea and a conviction. The court believes SA Moynihan's explanation that submitting the files in June 2019 was due to an oversight.

The NCMEC review occurred during the summer of 2019. On September 4, 2019, a NCMEC representative sent SA Moynihan an email stating that one of the computer files contained information showing that it "resolve[d] near Burlington VT." Gov't Ex. 6. The file appeared to depict sexual abuse of a child. It came from a cell phone seized from the Johnson residence. SA Moynihan reviewed the file herself. It showed an adult male abusing a two-year old child by rubbing his penis against her buttocks and ejaculating. The child was lying on a bed. The bedding included a white blanket with pink edging, a sheet with yellow, pink, and blue flowers, a pink pillow with flowers and butterflies, and fabric with a green elephant.

The September 4 email from NCMEC included GPS longitude and latitude coordinates found within the data associated with the cell phone video. Agent Moynihan entered these coordinates into the Google Maps program. She stated in her affidavit in support of the application for a search warrant that "the coordinates resolved back to a residence located at 7 Kingfisher Court in South Burlington, Vermont" which she recognized on the Google Maps photo as "the residence and the address from my previous investigation involving Cory Johnson."

This statement contained two mistakes which the Government concedes. First, the initial response from the Google Maps program known as "Street view" identified the address as "1 Hermit Thrush Lane," not 1 Kingfisher Court. This response was due to an error in the Google Maps program. The Government has supplied an affidavit from a Google employee who identifies the correct name of the street as "Kingfisher Court"—both in 2019 and currently. (Doc. 81-1.) When a user examines the Google Maps response to the GPS coordinates more closely, the overhead "Map" view makes it clear that the coordinates resolve to a residence on Kingfisher Court, not Hermit Thrush Lane.

The same close examination reveals a second error: the "pin" or location where the cell phone video was created is 1 Kingfisher Court, not 7 Kingfisher Court where the Johnson family once lived. Kingfisher Court is a development of duplex residences, all with odd-numbered addresses. 1 and 3 Kingfisher Court comprise the most easterly building. 5 and 7 Kingfisher Court are located in the next building to the west. The Johnson family residence at 7 Kingfisher Court was three doors away from the "pin" location identified in the Google Maps program.

After examining the coordinates, SA Moynihan determined that Cory Johnson resided at 7 Kingfisher Court from September 2008 until July 2017. SA Moynihan recognized the voice of the male on the video as Cory Johnson. She believed that the child—who is unrecognizable in the video—was the approximate age of the Johnsons' young daughter in 2016.

On September 19, 2019, SA Moynihan submitted a second search warrant request to Judge Conroy. The application seeks a warrant to search for the bedding shown in the video file at the Johnsons' current address at 21 Mountain View Boulevard. The affidavit in support of the application states that the GPS coordinates resolve to 7 Kingfisher Court. In fact, they resolve to 1 Kingfisher Court.

SA Moynihan testified that she believes she saw 7 Kingfisher Court when she used the Google Maps program to determine the address where the video was produced. The court finds her to be credible on this issue. A search warrant application showing that the video found on Mr. Johnson's cell phone was produced in the immediate vicinity of his prior address – but at 1 Kingfisher rather than 7 Kingfisher – would have been sufficient to support probable cause. SA Moynihan would have no reason or motive to make a false statement about this issue. And the mistake was easily identifiable since anyone, including Mr. Johnson's counsel, can access the Google Maps program and check the address. The court finds that SA Moynihan was mistaken about the address to which the coordinates resolved but that the mistake was unintentional and does not reflect any intent to mislead the court.

There is one more factual issue to discuss. After the September 4 email from NCMEC concerning the location of the creation of the cell phone video, other agents at the Homeland Security office where SA Moynihan worked at the time in South Burlington examined another cell phone video on Mr. Johnson's phone. This video was not contraband. It was not sent to NCMEC for review. It showed a man identifiable as Mr. Johnson smoking marijuana by himself. The GPS coordinates resolved to a location close to the common wall separating number 5 and number 7 Kingfisher Court. SA Moynihan learned about these coordinates and the close match to the former Johnson residence before she applied for the September 2019 warrant. She did not include information about the "marijuana video" in the application or affidavit she prepared in support of her warrant request.

## ANALYSIS

I. **Motion to Suppress the 2018 Warrant (Doc. 18)**

As a preliminary matter, the defendant asserts that he has the right to move to suppress a warrant issued in a prior prosecution. The Government does not oppose the motion on these grounds. The court agrees that the constitutionality of the warrant may be challenged for the first time in a subsequent prosecution. *United States v. Gregg*, 463 F.3d 160 (2d Cir. 2006).

The defense also contends that individuals have a privacy interest in the contents of their cell phones. The Government does not oppose this proposition either. The court agrees that in the absence of consent or some other exception to the warrant requirement, the Government could not search the defendant's cell phone without a warrant. *Riley v. California*, 573 U.S. 373 (2014). The expectation of privacy extends to GPS location information. *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

A. **Claims that the 2018 Warrant was Overly Broad**

The parties' disagreement over the issue of overbreadth concerns the time period to be covered by the search and the broad range of devices to be searched. The defendant seeks to suppress files such as the video at issue in this case, which was created before the two-month period when he was known to be active on KIK. He contends that "[t]he Affidavit presented no probable cause to search for evidence prior to that period." (Doc. 18 at 15.) The defendant also argues that the seizure of all of his electronic devices was too broad.

The Government responds that SA Moynihan acted correctly in seeking a warrant to seize all electronic devices, including all computers and computer media, because electronic information can be stored in multiple ways and a single device may have multiple users. Seizure of all devices was necessary to determine which, if any, were used in the crime she suspected

Defendant of committing. The Government also opposes the argument that probable cause was limited to the period of Defendant's activity on KIK. According to the Government, "[b]ecause . . . individuals involved with child pornography often build collections of images over time, the date an image was received or transferred would have little bearing on whether it might now provide evidence of the defendant's trading or collecting habits." (Doc. 29 at 18.)

In permitting a comprehensive search of Defendant's electronic devices without a time restriction, the search warrant did not violate the requirement of the Fourth Amendment that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The warrant contained two important restrictions. Attachment A identified the place as 21 Mountain View Boulevard. Attachment B identified the property to be seized as "material involving the receipt, distribution, transportation and possession of child pornography." (Gov't Ex. 2.) With the location and the offense conduct clearly identified, there is no constitutional requirement that the time of possession be limited to the two months when defendant was known to participate in the KIK chat space.

The crimes specified in the warrant application were "possessing, distributing and receiving child pornography." (Gov't Ex. 1.) These offenses were not limited to child pornography downloaded through KIK. The KIK tip provided a basis for a finding of probable cause to believe that defendant possessed child pornography. The investigation, however, was not limited to that conduct. S.A. Moynihan's affidavit described how "collections [of child pornography] are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly." (Gov't Ex. 1, ¶ 10(d).)

9

The cases cited by Defendant in support of a temporal limitation concern crimes which occur at a specific time. These include violations of state sex offender registration requirements, *United States v. Irving*, 347 F. Supp. 3d 615 (D. Kan. 2018), and public indecency, *United States v. Winn*, 79 F. Supp. 3d 904 (S.D. Ill. 2015). A search of all computer records, including dates prior to the charged offense, could reveal little or no relevant information and was consequently too broad. But possession of child pornography is conduct of a different stripe altogether. It has a beginning and an end, but these may be years apart. Probable cause to search or otherwise investigate the defendant may arise at any time during possession and frequently concerns only a small portion of the contraband in a defendant's collection.

The search limits proposed by Defendant—restricting the search to files created within a period of two months—would miss evidence of a file previously acquired. The Government was under no constitutional requirement to limit the search to images downloaded during any particular period of time. The protection against an overly broad search was met in this case by the requirement that the Government search only for evidence of child pornography crimes, not the date of the conduct giving rise to probable cause. *See United States v. Trader*, 981 F.3d 961, 969 (11th Cir. 2020).

Similarly, the Government was under no constitutional requirement to identify a small number of electronic devices to search. The warrant application and affidavit were comprehensive in their identification of every conceivable type of electronic device as potential sources of evidence. That is because electronic files appear on many types of devices. Televisions connect to the internet; cell phones have some of the same capabilities as laptops; and electronic traces of communication and use may be found on virtually any device with a memory chip or card.

Agent Moynihan's affidavit supporting the 2018 warrant application explained the need to seize many types of electronic devices:

> I know that data in digital form can be stored on a variety of systems and storage devices. . . . Some of these devices can be smaller than a thumbnail and can take several forms, including thumb drives, secure digital media cards used in phones and cameras, personal music devices, and similar items.

(Gov't Ex. 1, ¶ 32.) Courts have recognized the difficulty of specifying the precise form in which evidence may be found in a search, particularly in the case of electronic devices. *See United States v. Reyes*, 798 F.2d 380, 383 (10th Cir. 1986) ("[T]he seizure of a specific item characteristic of a generic class of items defined in the warrant did not constitute an impermissible general search."). In authorizing the seizure of many types of electronic devices, the warrant was not overly broad.

### B.    Claims that NCMEC Violated Defendant's Privacy Rights by Reviewing the Seized Files

Following Defendant's sentencing hearing, Agent Moynihan forwarded a hard drive containing 3,761 images and 3,653 videos to NCMEC. These were contraband images copied from Defendant's electronic devices. In her testimony, Agent Moynihan explained that she requested the NCMEC review even though the 2018 federal criminal case was closed to determine if there were images or videos of children previously unknown to NCMEC. Such cases could involve child victims in need of protection. She did not request expedited treatment and did not indicate a suspicion that Cory Johnson was involved in hands-on production of child pornography. (Gov't Ex 4.)

NCMEC processed the images and videos through its Child Recognition and Identification System ("CRIS"). The CRIS program compares certain characteristics of the images known as "hash values" against the hash values for previously identified images of child pornography. It was this comparison search which identified the video at issue in this case as

previously unknown and gave rise to the closer search for GPS coordinates and other information embedded in the video.

Defendant argues that NCMEC's review exceeded the scope of the 2018 warrant and that the warrant was "extinguished" by the plea agreement and subsequent conviction. The Government responds that NCMEC did not act as a government agent when it conducted the CRIS review. In support of that contention, the Government offers the following propositions:

- NCMEC conducted the review in furtherance of its mission of protecting children from future abuse.

- The criminal prosecution had already taken place.

- NCMEC was not partnering with law enforcement to develop a case as occurs when it reviews tips from internet service providers and forwards these to law enforcement for investigation.

- In addition, the images which HSI sent to NCMEC were copies of contraband to which Defendant had no further claim or interest.

The court begins with the final proposition. There is no privacy interest in contraband following its lawful detection. *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) ("No protected privacy interest remains in contraband in a container once government officers lawfully have opened that container and identified its contents as illegal."). Agent Moynihan forwarded only images of child pornography, not the entire contents of the Johnson family's computers and cell phones. Since the original search of the home and seizure of the electronic devices was legal, HSI was free to review contraband material itself or to enlist the aid of NCMEC to conduct a further review.

Defendant cites no authority for his position that the Government's right to search and examine the contraband files was "extinguished" by his conviction. Rule 41(e) of the Federal Rules of Criminal Procedure was amended in 2009 to address the necessary delay between the date of seizure of electronic media and the subsequent search of its contents. The rule now provides:

> Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

Fed. R. Crim. P. 41(e)(2)(B).

In this case, the warrant contained no explicit deadline for the later review. After Defendant's conviction, Agent Moynihan continued to investigate aspects of the possession offense. These were the identities and locations of the child victims. Their protection was a legitimate goal of the prosecution which was not removed by Defendant's conviction. The plea agreement foreclosed additional charges of possession of child pornography "known to the United States as of the date it signs this plea agreement, committed by him in the District of Vermont relative to his knowing possession or distribution of child pornography." Plea Agreement, *United States v. Johnson*, No. 5:18-cr-41, ¶ 12(a) (D. Vt. Dec. 17, 2018), ECF No. 28. But it did not provide any assurance that HSI would stop its investigation or destroy the seized images.

Because the court concludes that forwarding the contraband images to NCMEC did not violate the Fourth Amendment, there is no need in this case to determine whether NCMEC acted as an agent of law enforcement when it reviewed the files. HSI could have forwarded the contraband images to another federal agency or continued to examine the files in-house.

Upon receiving the report from NCMEC about the contraband video, Agent Moynihan renewed her examination of the video. With assistance from other agents, she confirmed the location information. She recognized Defendant's voice. And she identified the distinctive bedding. Her re-examination of legally seized contraband did not violate the Fourth Amendment.

Defendant argues that the Government took too long to reexamine the contraband video. A defendant convicted of child pornography has no right to the return or the destruction of the contraband images. Similarly, he has no reasonable expectation of privacy in the seized images. In the absence of a privacy interest in the contraband, there is no time limit on when the Government can renew its examination of the seized materials.

One aspect of the investigation which led up to the issuance of the second search warrant does present a potential violation. After receiving the NCMEC report, other HSI agents returned to the mirror image of Defendant's electronic devices created at the time of seizure and examined these again to determine if there were other images created at the same time which might confirm Defendant's identity. They located a "selfie" video, created by defendant about 30 minutes after the contraband video, showing him smoking marijuana. By the time of this second search, the focus of the investigation had moved to the offense of production of child pornography—an offense not identified in the original search warrant application. It no longer concerned the offense of possession for which Defendant had already been convicted. It was not part of HSI's search for unknown child victims. It related to the investigation of new charges against Defendant.

The leading case in the Second Circuit on the issue of delay in searching an individual's computer files is *United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016) (en banc). In that case,

the court considered the effect of a two-and-a-half-year delay in obtaining a second warrant to search previously seized hard drives. *Ganias* concerned a long-running investigation which started as a false claims investigation into certain government contractors and, three years later, resulted in the indictment of Ganias for tax evasion. Ganias sought to suppress the results of a second search warrant issued after the Government had held a mirror copy of his computer for three years.

In *Ganias*, the court noted that

> [t]he seizure of a computer hard drive, and its subsequent retention by the government, can give the government possession of a vast trove of personal information about the person to whom the drive belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure.

*Id.* at 217. The court ruled that it was unnecessary to resolve the issue of whether a new warrant was required in *Ganias* because any violation of the Fourth Amendment was subject to the good faith exception to the exclusionary rule. "At the time of the retention, no court in this Circuit had held that retention of a mirrored hard drive during the pendency of an investigation could violate the Fourth Amendment . . . ." *Id.* at 225. For this reason among others, the court held that suppression was not appropriate. Since *Ganias*, no Second Circuit decision has provided further guidance on how long electronic media subject to an expectation of privacy may be retained by the Government.

In the present case, it is unnecessary to answer the retention question directly. The Government concedes that it will offer the video only in rebuttal:

> In this case, if Johnson falsely denied that he was the individual in the video with the child who calls him "Daddy," the government should be able to rebut that information with the marijuana video, regardless of whether or not it would be subject to suppression if offered in the case in chief.

(Doc. 29 at 26.) Information about the marijuana video does not appear in the application for the second search warrant. Agent Moynihan had ample reason to suspect that Defendant appeared in

the contraband video based on the address location, the GPS address location, her familiarity

with his voice, and the approximate age of the child victim. As a practical matter, the marijuana

video was excluded from the search warrant process and, prospectively, from use at trial except

as rebuttal. There is no need to issue a further ruling on whether the court would also exclude it

from evidence.

## II.  Motion to Suppress the 2019 Warrant (Doc. 19)

Defendant argues that the 2019 warrant issued without probable cause because the

Johnson had family had previously moved away from their home on Kingfisher Court. He

contends:

> Probable cause to believe that particular items of bed clothing in a video *taken three*
> *years before* were not only still in existence, but were still in the family's possession
> and at the family's new residence at the time the warrant was to be served, was
> clearly absent from the 2019 Affidavit.

(Doc. 19 at 3.)  The Government responds that "[p]resuming the family, like most, moved their

bedding to their new home, only a short time had passed since the bedding arrived at the house

before Johnson's arrest." (Doc. 29 at 28.)

The court determines whether probable cause was present through application of a

totality of the circumstances test. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Here both Agent

Moynihan's affidavit and the experience of anyone who has moved from one home to another

support the conclusion that the distinctive bedding seen in the contraband video was likely still

present at the new address. Defendant has offered no evidence that many people purchase new

soft goods when they move to a new residence. Defendant cites cases in which law enforcement

based a search for drugs or other evidence of crime on the previous seizure of evidence. It is fair

to observe that possession of cocaine in your pocket may not justify the search of your bedroom

or office. But the search in this case was not an unfocused search for evidence of additional

criminal behavior in general. Rather, it was a search for particular household goods in the possession of the only people known to possess them. Searching for the distinctive bedding at the Johnsons' new address was entirely reasonable.

Because the court concludes that HSI had probable cause to seek the second warrant, there is no need to consider the issue of the good faith exception or suppression of the statements made by Ms. Johnson and her daughter.

**III.    Franks Issues**

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court recognized the right of criminal defendants to challenge the veracity of an affidavit supplied in support of a request for a search warrant. To succeed in his challenge, a defendant must make two showings:

- Proof by a preponderance that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and

- The remaining content of the affidavit is insufficient to establish probable cause.

In this case, the defendant cannot meet his burden of proof on the criterion of intentional falsity or materiality.

**A.    Intentional Falsity or Reckless Disregard for the truth**

The court has already determined that SA Moynihan had no intention of misleading the magistrate concerning the strength of the Government's application. The GPS coordinates demonstrated a strong connection between Mr. Johnson and the location where the cell phone video was created—even if the coordinates resolved to a neighbor's residence. This made any prevarication unnecessary. The GPS coordinates became a permanent part of the investigation file and could be used by anyone familiar with Google Maps to check the location. That made any false statement open to easy detection—exactly as happened here. It is highly probable that

SA Moynihan mixed up the two addresses: 1 Kingfisher Court and 7 Kingfisher Court. It is extremely unlikely that she did so on purpose. *See United States v. Toney*, 819 F. App'x 107, 110 (3d Cir. 2020) (defendant failed to demonstrate that inconsistencies between "4181 Leidy Avenue" and "4179 Leidy Avenue" in a warrant application "were anything more than typographical error").

There is similarly no evidence of reckless disregard for the truth of the statement. Recklessness requires a showing of something greater than an error. In this case, the only additional information available to SA Moynihan after making the initial mistake in the address was the marijuana video. Those coordinates resolved closer to 7 Kingfisher Court—giving the agent no reason to question her original conclusion. The other information available to her, such as the sound of Mr. Johnson's voice and the age of his daughter, also confirmed that he was the man depicted in the video. Had SA Moynihan ignored evidence that the video was not produced at 7 Kingfisher Court, she might be accused of reckless disregard. Instead, all other information available to her supported her mistaken belief that the GPS coordinates resolved to 7 Kingfisher Court. These provide evidence that her mistake was reasonable.

## B.    Materiality

Even if we remove the mistake in the address and correct the GPS information to reflect the resolution of the coordinates to the neighbor's residence, there remains the striking coincidence of a cell phone video recovered from Mr. Johnson's home, showing a man and a child generally consistent in age with him and his daughter, including a voice similar to his voice, and produced in his immediate neighborhood. Of all the places in the world covered by GPS—everywhere—the GPS coordinates resolved to Mr. Johnson's immediate neighborhood. This GPS information was embedded in media previously taken off a phone known to belong to

him. Had the agent brought this information to the magistrate judge, excluding any reference to 7 Kingfisher Court, the information would have supported a finding of probable cause for a warrant. *See United States v. Aguiar*, 737 F.3d 251, 263 (2d Cir. 2013) (holding that affidavit contained sufficient information to support issuance of hybrid order notwithstanding agent's false statement of a phone number).

In reaching this conclusion, the court starts with the objective standard described in *Terry v. Ohio*: "in making that assessment [of probable cause] it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief that the action taken was appropriate.'" 392 U.S. 1, 21-22 (1968) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 96-97 (1964)). *Terry* concerned probable cause for a seizure of the person, but as the decision explains, the test is the same for the issuance of a warrant. This standard requires "less than evidence which would justify . . . conviction" but yet "more than bare suspicion." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). Information relevant to this inquiry is generally of three types: evidence that a crime was committed, the identity of the suspect, and information about where the evidence might be located. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (6th Ed.) § 3.2(e) (2020).

Here there can be no doubt that there was strong evidence that a crime had occurred. The video shows the sexual abuse of a small child by an adult. Setting aside the mistake over the address for the GPS coordinates, there was also strong evidence of the identity of the suspect. This includes the discovery of the video on the defendant's cell phone, the GPS evidence that the video was created within the neighborhood where he and his family lived previously, and the general correlation of the age, voice and gender of the individuals shown with the suspect and his

daughter. The video could, of course, have shown an entirely different pair of people living or visiting the area of Kingfisher Court, but that is not particularly probable. Finally, the information about where the evidence might be located—the Johnson family's current residence—was present as well.

Because the court concludes that the error was not intentional or reckless and that it was not sufficiently material to the magistrate judge's decision to issue the warrant, the court concludes that suppression under the *Franks* doctrine is not appropriate.

## Conclusion

Defendant's Motions to Suppress (Docs. 18, 19) are DENIED.

Dated at Rutland, in the District of Vermont, this 29th day of June, 2021.

Geoffrey W. Crawford, Chief Judge
United States District Court